```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

                                        :
YOLANDA C.,                             :
                                        :
    plaintiff,                          :
                                        :
v.                                      :    Civil No. 3:23-cv-951-RAR
                                        :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
    defendant.                          :
```

## RULING ON PENDING MOTIONS

Yolanda C. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated July 20, 2022. Plaintiff timely appealed to this Court.

Currently pending before the Court are plaintiff's motion to reverse or remand her case (Dkt. #17-1) and defendant's motion to affirm the Commissioner's decision (Dkt. #23-1).

For the following reasons, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

## PROCEDURAL HISTORY

Plaintiff initially filed an application for Disability Insurance Benefits under Title II and for Supplemental Security

1

Income under Title XVI of the Social Security Act on April 14, 2021. (R. 16.)  Plaintiff alleged an onset date ("AOD") of April 1, 2019. (R. 16.)  Plaintiff's claims were initially denied on September 7, 2021, and upon reconsideration on December 6, 2021. (R. 39-61.)  Thereafter, plaintiff filed a written request for a hearing and Administrative Law Judge Dwight Wilkerson ("ALJ") held a hearing on May 6, 2022. (Id.)  After the hearing, ALJ Wilkerson issued a written decision denying plaintiff's application on July 20, 2022. (R. 16-32.) Plaintiff thereafter sought review by the Appeals Council, which was denied on June 1, 2023. (R. 1-4.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court may not make a de novo determination of whether a claimant is

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

2

disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. §

423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)–(v).

[3] The determination of whether such work exists in the national economy is made without regard to 1) "whether such work exists in the immediate area in

4

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act since April 1, 2019 through the date of the decision. (R. 31.)

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the application date of April 1, 2019. (R. 20.)

At step two, the ALJ found that plaintiff had the following severe impairments: "diabetes, seizures, bilateral carpal tunnel syndrome, migraine headaches, cervical degenerative disc disease, obstructive sleep apnea, major depressive disorder, anxiety, and post-traumatic stress disorder (PTSD)." (R. 20.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a listed impairment. First, the ALJ considered whether the severity of plaintiff's medical conditions met or exceeded a variety of listings.  The ALJ specifically addressed listing 1.15 for disorders of the skeletal spine, listing 1.18 for abnormality of a major joint, listing 11.02 for epilepsy, and listing 11.14 for disorganization of motor function. (R. 20–21.) As to listings

---

which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

5

1.15 and 1.18, the ALJ determined that there was insufficient evidence in the record to "demonstrate impairment-related physical limitation" concerning the musculoskeletal functioning of the specified system to meet the listing requirement. (R. 20-21.)  The ALJ also determined that listing 11.01 for epilepsy was not met, as the evidence in the record did not establish that the claimant suffered from the types of seizures or with the frequency required to meet the listing. (R. 21.)

The ALJ continued by evaluating whether the severity of any of plaintiff's mental impairments met or exceeded listings 12.04, 12.06, and 12.15. (R. 21.)  The ALJ remarked that, based on the evidence of record, that the plaintiff suffered from mild to moderate limitations in the paragraph B criteria and therefore did not meet the listing requirements for any of the noted sections. (R. 21-22.) Additionally, the ALJ considered the paragraph C criteria and found that there is no evidence in the record indicating "a minimal capacity to adapt to changes in the claimant's environment or to the demands that are not already part of the claimant's daily life." (R. 22-23.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except that she can occasionally climb ramps and stairs, but should never climb ladders, ropes, and scaffolds.  Balance is unlimited.  Stopping, kneeling, coughing, and crawling can be performed occasionally.

6

> The claimant is limited to frequent handling, fingering, and feeling bilaterally. She should avoid concentrated exposure to vibration, as well as all exposure to dangerous machinery and unprotected heights. The claimant is capable of performing simple, routine tasks involving simple work-related decisions with few, if any, workplace changes. The work should not involve fast paced production requirements. The claimant can sustain concentration, persistence, and pace to perform these tasks for 2-hour increments across an 8-hour workday. The claimant can occasionally interact with supervisors, coworkers, and the public.

(R. 23.) The ALJ relied on medical evaluations, treatment records, and plaintiff's testimony in establishing the RFC. (R. 23-29.) At step four, the ALJ concluded that plaintiff could not perform her past relevant work as a truck driver. (R. 29.) Lastly, at step five of the process, the ALJ determined that based on the testimony of a vocational expert, there were sufficient jobs available in the national economy that plaintiff could perform. Specifically, the ALJ identified the positions of Office Helper, Mail Clerk, and Router. (R. 30.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that plaintiff was not under a disability since the alleged onset date of April 1, 2019, through the date of the decision. (R. 31.)

## **DISCUSSION**

The plaintiff makes one argument in support of her motion to reverse the decision of the Commissioner. Specifically, plaintiff asserts that the ALJ's RFC finding is unsupported by

7

substantial evidence because the ALJ failed to properly evaluate the medical opinion of Kathy Seigler. (Pl. Br. at 1.)  Plaintiff essentially argues that due to this alleged error, the ALJ's opinion is deficient at a number of steps.  First, that the error means the ALJ did not include Dr. Seigler's assessed limitations in the RFC and later that the hypothetical posed to the VE lacked reference to these same limitations. (Dkt. #24 at 4.)  The Court disagrees.

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  An individual's RFC is the most an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

In formulating an appropriate RFC, an ALJ is required to review and evaluate the medical records and opinions.  The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical sources."  20 C.F.R. § 416.1920c(a).  The ALJ will consider any

8

medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c).  The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical.  20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

9

In the event that the court does not find that the RFC determination was subject to a legal error, the issue will become one of substantial evidence. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

As mentioned, plaintiff's main assertion appears to be that the ALJ's determination regarding the persuasiveness of Dr. Seigler's opinion was unsupported by substantial evidence. Further, plaintiff argues that the ALJ has impermissibly cherry-picked evidence favorable to his RFC finding and substituted his own lay judgment for that of a medical professional.

Dr. Seigler, a licensed clinical psychologist, performed a consultive evaluation of the plaintiff on February 26, 2020. Following the evaluation, Dr. Seigler issued a brief, 4-page, report outlining her findings. (R. 387-90.) The report contained multiple paragraphs of background information about the plaintiff, including information about her upbringing, her education, her martial status, and her occupation. (R. 387-88.)

Further, the report provided a brief medical and psychiatric history, as well as a current medication list. (R. 388.)

The main portion of Dr. Seigler's report contained a mental status examination and an outline of diagnostic impressions and functional capacity. Dr. Seigler noted that the plaintiff was "pleasant," and a "reliable historian . . . [who is] well-groomed and appropriately dressed." (R. 389.) The report notes that plaintiff had a normal gait and posture and her motor activity was unremarkable. According to Dr. Seigler's report, plaintiff showed normal attention and fair concentration, with normal eye contact and constricted facial expression. (R. 389.) Dr. Seigler noted normal language abilities and appropriate thought content. Dr. Seigler stated that plaintiff's thoughts appeared organized, linear, and goal directed. Plaintiff had adequate knowledge, and her abstract reasoning was intact. Finally, Dr. Seigler opined that plaintiff's judgement was good and decision-making skills appeared to be normal. Dr. Seigler noted diagnostic impressions of PTSD, Major depressive disorder, and a "possible" mild neurocognitive disorder. (R. 390.) However, regarding the neurocognitive disorder, Dr. Seigler noted that this was provisional and required further confirmation. (R. 390.)

As mentioned previously and articulated in both the brief in support of plaintiff's motion, and the response to the

11

Commissioner's objection, plaintiff's claim is that the ALJ erred in failing to properly evaluate the opinion of Dr. Seigler. Specifically, plaintiff alleges that the ALJ cherry-picked the evidence and substituted his judgment for that of a medical expert. (Dkt. #17-1 at 5-11 and #24 at 2-4.) The Commissioner responds by arguing that the ALJ evaluated the medical evidence and found an RFC that is supported by substantial evidence. (Dkt. #23-1 at 4.) Further, the Commissioner argues that the ALJ was permitted to, and did find, that Dr. Seigler's opinion was not persuasive. (Dkt. #23-1 at 6-8.) The Commissioner also argues that the ALJ did not cherry-pick evidence, and rather noted multiple times that the plaintiff was said to appear tearful, depressed, and had mood abnormalities. (Dkt. #23-1 at 6-7.) Importantly, the Commissioner also highlights that the ALJ made his determination regarding plaintiff's RFC from the entirety of the record which included additional medical findings from state agency psychologists who reviewed the entire record, including the report from Dr. Seigler.[4] (Dkt. #23-1 at 8.)

---

[4] Plaintiff's brief does not mention or address the medical findings of the two State Agency psychologists which are consistent with the ALJ's RFC finding. (R. 26-28.)

In evaluating the medical opinion evidence[5] in the record the ALJ began with a review of the state agency consultants, who adopted a prior ALJ's RFC determination upon review of much of the medical evidence in the record.  The ALJ found that these opinions were persuasive, noting that the opinions were supported with an explanation and were "consistent with the totality of the evidence." (R. 26-27.)  The ALJ also highlights portions of the medical records that support this finding, meaning they are consistent with the consultants' recommendations.  Considering these findings, the ALJ notes the determinations that were made regarding the plaintiff's ability to perform work activities related to her mental health conditions. (R. 27.)  The ALJ also took the time to highlight that there are records to indicate plaintiff was tearful, and some records note mood abnormalities.  (R.27-28.) Taking these records into considertion, the ALJ notes that the plaintiff is limited to occasionally interacting with others. (R. 28.)  "It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability." Colvin v. Astrue, No. 09-CV-946S,

---

[5] The Court notes that the medical opinions at issue and addressed in this ruling relate to the mental health concerns of plaintiff, as opposed to the physical limitations.  Plaintiff has not raised any objection to the physical limitations contemplated by the ALJ's RFC.

13

2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011). Additionally, the Court notes that this evaluation by the ALJ showed that the persuasiveness provided to the opinions of the consultants, unchallenged by plaintiff, was supported with thorough citation to the record.

The ALJ then proceeded to evaluate the opinions of Dr. Seigler, the consultive examiner, and found that the opinion was not persuasive. (R. 28.) The ALJ noted that Dr. Seigler's opinion contained findings of moderate limitations in the ability to understand, remember and carry our simple and repetitive tasks. Dr. Seigler also opined that plaintiff would have "moderate to marked limitation in the ability to sustain attention and concentration, and a marked limitation in the ability to tolerate stress and pressure of day-to-day employment." (R. 28.) The ALJ highlights that Dr. Seigler provided a brief explanation and pointed to plaintiff's diagnosis but concluded that the "totality of the evidence is consistent with greater sustained capacity." (R. 28.) Had the ALJ stopped here, without further citation to the record, perhaps the Court would agree with plaintiff that there is insufficient support for the ALJ's persuasiveness finding. Certainly, it would have appeared that the ALJ may have substituted his own judgment. However, the ALJ continued the analysis and highlighted the record evidence that showed

14

plaintiff to have a greater capacity for work than that found by Dr. Seigler. The ALJ focused on medical records indicating an intact and normal memory and fund of knowledge. (R. 28, citing R. 884, 898, 906, 913, 1316, 1339, 1345, 1367, 1382.) The ALJ further cited records indicating fair to good reasoning (R. 914 and 920), normal thought process (R. 924, 928, 1726, 1731, and 1736), linear and logical thought (R. 884, 906, and 920), and good attention[6] and concentration (R. 913.). Given the cited records, and the previous findings from the state agency consultants, the ALJ noted that he found the plaintiff could perform "simple, routine tasks; the work should not involve fast paced production" and plaintiff could "sustain concentration, persistence, and pace to perform these tasks for 2-hour increments across and 8-hour workday." (R. 28.)

The ALJ continued his analysis by citing evidence in the record showing the plaintiff to be cooperative, pleasant, with good eye contact, and with a normal mood and affect. (R. 28.) The ALJ also highlighted some mood issues and noted records showing mood abnormalities and noted that there should be a limitation to occasional interaction with others. (R. 28.)

The Court finds that the ALJ's analysis is sufficient to show that that the ALJ considered the totality of the medical

---

[6] The ALJ also noted some records showing only fair concentration. (R. 28 citing 884, 898, 906.)

evidence in the record when evaluating the persuasiveness of the medical opinion evidence. The ALJ highlighted the various findings in the records and then tied the RFC limitations back to those very records. In so doing, the ALJ made clear that the findings of the state agency consultants were more consistent with the medical evidence in the record, and that the slightly more restrictive findings of Dr. Seigler were not. Additionally, while discussing the opinion of Dr. Seigler, the ALJ noted that there was some brief explanation in the report. The Court notes this in connection with the ALJ's review related to supportability.

In a reply to the Commissioner's brief, plaintiff points to the ALJ's failure to specifically address Dr. Seigler's observation regarding plaintiff's facial expression, anxious mood, status as a reliable historian, and prognosis of guarded without treatment as evidence of the ALJ's alleged cherry-picking of the evidence.[7] (Dkt. #24 at 2.) "Cherry-picking can be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source. Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement

---

[7] The Court notes, additionally, that plaintiff has failed to cite to any evidence beyond the four pages of Dr. Seigler's report to argue that the ALJ erred in his determination regarding persuasiveness. As the plaintiff is aware, the ALJ in analyzing consistency will look to the totality of the evidence of record and the relation of that evidence to the opinion at issue.

16

that all evidence be taken into account, or both." Lisa T. v. Kijakazi, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022)(internal quotations and citations omitted)).

It is well established that "an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal." Vanessa N. v. Comm'r of Soc. Sec., No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *5 (W.D.N.Y. Sept. 9, 2024)(citing Brault v. Comm'r of Soc. Sec., 683 F.3d 444, 448 (2d Cir. 2012)).  The ALJ here, put forth the findings of Dr. Seigler, noting that she found some marked and moderate restrictions.  However, the Court also notes that the ALJ cited to multiple medical records to show that Dr. Seigler's findings were not consistent with the record.  The Court, in this instance, was provided with a sufficient analysis to determine that the ALJ properly evaluated the consistency and supportability of Dr. Seigler's opinion, and those of the state agency consultants.  The Court is unable to find any legal error and has determined that the ALJ's determination of the plaintiff's RFC was properly supported by substantial evidence.

The Court notes that Dr. Seigler's opinion would be more restrictive regarding plaintiff's abilities, but that does not carry the day absent legal error.  A reviewing Court does not "decide the facts anew, nor [] reweigh the facts, nor [] substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Gina C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022).

As a final note, plaintiff makes a passing argument related to the hypothetical questions posed to the VE at step five of the sequential evaluation process.  Plaintiff argues that the ALJ committed error by failing to incorporate Dr. Seigler's limitations into those hypotheticals, presumably because it was error to have not found them persuasive.  Having found that the ALJ did not err in his application of the persuasiveness factors as to Dr. Seigler, the Court further concludes that it was not erroneous for the ALJ to refrain from incorporating those limitations into the VE hypotheticals.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand (Dkt. #17-1) is DENIED and the Commissioner's motion to affirm (Dkt. #23-1) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 20th day of September 2024, at Hartford, Connecticut.

> /s/
> Robert A. Richardson
> United States Magistrate Judge